UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE BUCHWALD

------------------------------------------------------------------x

QIAO XIAO HE, EDGAR GOMEZ,
JUNG JA CHAE, YOUNG OK YI, DESIREE CHUNG,
SVETLANA TINKELMAN, ALEKSANDRA GRINBERG,
KYUNG SILL HYUN, and LETITIA JAMES, as Public
Advocate for the City of New York

15  CV  04278

                      Plaintiffs,                              _____CV_____

            -against-

                                                    COMPLAINT AND
                                                    DEMAND FOR JURY
                                                    TRIAL

JACQUES JIHA, the Commissioner
of the New York City Department of Finance,
in his individual and official capacities, the
NEW YORK CITY DEPARTMENT OF
FINANCE, and the CITY OF NEW YORK,

                      Defendants.

------------------------------------------------------------------x

Plaintiffs Qiao Xiao He, Edgar Gomez, Desiree Chung, Svetlana Tinkelman, Aleksandra

Grinberg, and Kyung Sill Hyun, by and through their attorneys, Legal Services – NYC, and Jung

Ja Chae and Young Ok Yi, by and through their attorneys, Legal Services – NYC and Min Kwon

Center for Community Action, (collectively, "individual plaintiffs"), and Letitia James, Public

Advocate for the City of New York, complain of Defendants Jacques Jiha, the Commissioner of

the New York State Department of Finance, the New York City Department of Finance

("DOF"), and the City of New York, and respectfully allege:

## PRELIMINARY STATEMENT

1.      Plaintiffs are the elderly widows and adult disabled children of deceased beneficiaries of a rental assistance program administered by Defendants. The program allows low-income households "headed" by elderly and/or disabled New Yorkers living in rent regulated housing to freeze their rent at a given rate, preventing the neediest New Yorkers from being evicted, becoming displaced, and/or becoming homeless as rents rise over time.

2.      Plaintiffs bring this action pursuant to the City Administrative Procedure Act ("CAPA").

3.      The individual Plaintiffs bring this action pursuant to 42 U.S.C. § 1983.

4.      Plaintiffs He, Gomez, Chung and Grinberg also bring this action pursuant to the Americans with Disabilities Act ("ADA") and the New York City Human Rights Law ("NYCHRL").

5.      The aforementioned rent freeze program is available to households where a designated "head of household" is a senior citizen, under the Senior Citizen Rent Increase Exemption ("SCRIE"), as well as those whose designated head of household is an individual with a disability, under the Disability Rent Increase Exemption ("DRIE").

6.      Defendants, as well as the New York City Department for the Aging ("DFTA"), which previously administered the SCRIE/DRIE program, have consistently allowed, and continue to allow, surviving members of a household receiving SCRIE/DRIE benefits to maintain the same frozen rent rate after the designated head of household dies (known as a "benefit takeover"), so long as the next designated head of household meets certain criteria, which all individual Plaintiffs in this action do.

7.      Beginning on or about May of 2014, Defendants instituted a policy of disallowing benefit takeovers where eligible surviving household members fail to inform Defendants within 60 days of the death of the heads of household (the "60 day rule").

8.      Defendants failed at any point to provide notice of the 60 day rule to any Plaintiffs in this action or to their deceased head of household.

9.      Defendants have instituted and implemented this onerous 60 day rule, despite the fact that it exceeds the scope of Defendants' rulemaking authority and without engaging in proper rulemaking procedures.

10.     Defendants have applied the 60 day rule stringently and without modifications or accommodations, regardless of whether an applicant for a benefit takeover is disabled within the meaning of the ADA and/or the NYCHRL.

11.     Individual Plaintiffs in this action, unaware of the 60 day rule, did not notify Defendants within 60 days of the death of their heads of household.

12.     As a result, Defendants have refused to allow the individual Plaintiffs to maintain their frozen rent rates, causing the individual Plaintiffs' rents to increase far beyond their ability to pay.

13.     Defendants have further refused to allow individual Plaintiffs to recalculate their applicable frozen rent, despite the fact that relevant law allows for such a recalculation where the death of a family member causes a permanent decrease in a beneficiary household's income of more than 20%.

14.     As a direct and proximate result of Defendants' acts and omissions, detailed herein, all individual Plaintiffs, low-income elderly and/or disabled New Yorkers, are facing eviction, displacement, and/or homelessness.

3

15.     Individual Plaintiffs, like all recipients of SCRIE/DRIE benefits, who are by definition low-income elderly and/or disabled New Yorkers, are members of a particularly vulnerable population for whom eviction, displacement, and/or homelessness would constitute an extreme, irrevocable trauma.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1343(3), (4).

17.     Supplemental jurisdiction over Plaintiffs' city law claims is proper under 28 U.S.C. § 1367.

18.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in this District because the cause of action arose in the Southern District of New York, Defendants are located, and Defendant DOF resides, in this District, and the actions and omissions of Defendants giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

19.     Plaintiff Qiao Xiao He is, and has been at all relevant times, a resident of New York County.

20.     Plaintiff Edgar Gomez is, and has been at all relevant times, a resident of Bronx County.

21.     Plaintiff Svetlana Tinkelman is, and has been at all relevant times, a resident of Kings County.

22.     Plaintiff Aleksandra Grinberg is, and has been at all relevant times, a resident of Kings County.

23.     Plaintiff Jung Ja Chae is, and has been at all relevant times, a resident of Queens County.

24.     Plaintiff Young Ok Yi is, and has been at all relevant times, a resident of Queens County.

25.     Plaintiff Desiree Chung is, and has been at all relevant times, a resident of Bronx County.

26.     Plaintiff Kyung Sill Hyun is, and has been at all relevant times, a resident of Queens County.

27.     Plaintiff Letitia James is the Public Advocate for the City of New York (the "City"). The Public Advocate is charged under the New York City Charter with receiving and attempting to resolve individual complaints concerning city services and city agencies. NYC Charter Ch. 2 § 24(e). Constituents have consistently expressed concerns regarding the functioning of these services. In October of 2014, the Public Advocate held a community clinic to help people apply for SCRIE and DRIE. As the City's ombudsperson, she has an interest in ensuring that City services and programs inure to the benefit of those they are intended to reach.

28.     Since Letitia James took office on January 1, 2014, the office has received 44 complaints reflecting a variety of problems with the application and renewal process for the SCRIE and DRIE programs, in addition to the problems that individual plaintiffs describe in this action. The Public Advocate was contacted by a 95-year old woman who has been living in her Manhattan rent-regulated home for over 20 years. She was receiving SCRIE benefits under her husband's name until he moved to a nursing home on November 27, 2013. She submitted her routine SCRIE Benefit Takeover application in January 2015 and was denied on February 9, 2015 for missing a "60 day deadline" she had never previously been made aware of. She

appealed, and was again denied on February 19, 2015. Since March 2015, her rent has risen to $954.40 from $590.58, and the new rent is far beyond her means. Her income is $733 from Supplemental Security Income (SSI) and $189 in SNAP benefits monthly. The office has expended time and resources, and will continue to do so, to assist this family negatively affected by the new unpromulgated 60 day rule.

29.    The City Charter designates the Public Advocate as the official responsible for ensuring enforcement of the City Charter and investigating violations of the Charter. NYC Charter Ch. 2 § 24 (i) and (n). Consistent with this interest, she also chairs a new oversight body, the Commission on Public Information and Communication ("COPIC") which is concerned with government transparency. NYC Charter Ch. 47 § 1061. The City Administrative Procedure Act ("CAPA") is included in Chapter 45 of the New York City Charter, and requires that agencies follow filing, notice and public comment requirements and deadlines when issuing new rules or making amendments to rules.

30.    Defendant Jacques Jiha, is the Commissioner of the DOF, with ultimate responsibility for ensuring DOF's compliance with all applicable laws, as well as ultimate responsibility for promulgating DOF's policies, procedures, and administrative regulations with respect to, *inter alia*, the SCRIE and DRIE programs. His principal place of business is located at 66 John Street, New York, New York 10038.

31.    Defendant New York City Department of Finance ("DOF") is a New York City agency with its principal place of business located at 66 John Street, New York, New York 10038. Defendant DOF administers the SCRIE and DRIE programs pursuant to the Real Property Law, N.Y. Real Prop. Tax Law 467, and N.Y.C. Admin. Code §§ 26-405 and 26-509.

32.     Defendant City of New York is a municipal body created and authorized under the laws of the State of New York. It is authorized under the laws of the State of New York to maintain a Department of Finance. It is further authorized under the laws of the State of New York to implement and administer the DRIE/SCRIE programs within the City of New York.

## STATUTORY AND REGULATORY SCHEME

### SCRIE/DRIE Program

33.     The Senior Citizen Rent Increase Exemption ("SCRIE") and the Disability Rent Increase Exemption ("DRIE") programs (collectively referred to as the "SCRIE/DRIE program") were enacted to ensure that elderly and/or disabled New Yorkers of limited means can stay in their homes without facing displacement, eviction, and/or homelessness as a result of rent increases.

34.     The New York City Council has found that "there is an acute and continuing housing shortage [that] has and continues to have an adverse effect on the population and especially on inhabitants of the city who are sixty-two years of age or older and of limited means, as well as persons with disabilities, who cannot pay enough rent to induce private enterprise to maintain decent housing at rents they can afford to pay." N.Y. Admin. Code § 26-405(m).

35.     The New York City Council further found that rising rents disproportionately affect elderly and/or disabled New Yorkers "because of their particular inability to find alternative accommodations within their means, because of the trauma experienced by many older persons, as well as persons with disabilities, who have to relocate and because they may endanger their health by paying additional sums for shelter and thereby deprive themselves of

other necessities; that hardships imposed by such people adversely affect their health and welfare and the general welfare of the inhabitants of the city." N.Y. Admin. Code § 26-405(m).

36.     The SCRIE/DRIE program addresses the aforementioned concerns of the City Council by freezing the rent of households headed by eligible senior citizens and qualifying individuals with disabilities who live in rent regulated housing. This is accomplished by providing a tax abatement credit to the beneficiary household's landlord equal to the difference between the SCRIE/DRIE recipients' frozen rent rate and the lawful rental rate for the recipients' dwelling.

37.     The SCRIE/DRIE program is codified in N.Y. Admin. Code §§ 26-509, 26-405, 26-406 and 26-601 *et seq.*

38.     The SCRIE/DRIE program is administered by Defendant DOF, pursuant to N.Y. Admin. Code §§ 26-406 and 26-509.

39.     Defendant DOF is empowered to promulgate "such rules and regulations as may be necessary to effectively carry out the provisions" of the program, pursuant to N.Y. Admin. Code § 26-509 and 26-611.

40.     A household is eligible for the SCRIE program if:

   a.     A designated "head of household" is 62 years old or older or has a qualifying disability;

   b.     The household resides legally in a rent-regulated apartment;

   c.     The household has an annual household income of $50,000 or less; and

   d.     The household spends more than one third of the household's total monthly income on rent.

41.     Defendants' SCRIE/DRIE benefits application form does not use the term "head of household," but simply uses the term "tenant."

42.     "Head of household" is not defined in any of the relevant statutes or materials published by Defendants.

43.     An individual has a qualifying disability for the purposes of DRIE if he/she shows proof to Defendant DOF that he/she is a recipient of, *inter alia,* Social Security Disability Insurance ("SSDI"), Supplemental Security Income ("SSI"), or a disability pension or disability compensation benefit through the United States Department of Veterans Affairs. N.Y. Admin. Code § 26-509(b)(2)(i).

44.     A household for SCRIE/DRIE purposes consists of one or more individuals living in the same dwelling, all of whom must be listed on SCRIE/DRIE applications and/or recertification applications.

45.     A household approved for the SCRIE/DRIE program maintains their frozen rent until the expiration of the household's lease, at which point the household may recertify its eligibility for continued SCRIE/DRIE benefits, thus maintaining the previously frozen rent rate.

46.     New York City Rent Stabilization Law, NYC Admin. Code § 26-509(b)(6,) and the NYC Rent Control Law, Admin Code. §26-405(m)(6), provide a six month grace period after the expiration of a household's lease, during which time the household's rent continues to be frozen and the household has an opportunity to recertify its continued eligibility for SCRIE/DRIE benefits.

## New York City Administrative Procedure Act

47.     The New York City Administrative Procedure Act ("CAPA"), Chapter 45 of the New York City Charter, prohibits agencies of the City of New York from adopting rules unless said agency complies with the notice, publication, comment, and other requirements of CAPA.

48.     Under CAPA's requirements, an agency is prohibited from issuing a rule without first doing, *inter alia*, the following:

    a.  Publishing a notice of proposed rulemaking in the City Record, which shall include the full text of the proposed rule as well as the "basis and purpose of the proposed rule, the statutory authority… upon which the action is based, the time and place of public hearing, if any, to be held or the reason that a public hearing will not be held, and the final date for receipt of written comments." New York City Charter § 1043(b);

    b.  Transmitting copies of the aforementioned notice of proposed rulemaking to each member of the New York City Council, the New York City Corporation Council, the chairs of all community boards, the news media, and civic organizations. New York City Charter § 1043(a), (b);

    c.  Allowing the New York City Corporation Counsel to review the proposed rule and determine whether it is within the agency's rulemaking authority. *Id.* at § 1043(c); and

    d.  "Provid[ing] the public an opportunity to comment on the proposed rule

        i.  Through submission of written data, views, or arguments, and

        ii.  At a public hearing unless it is determined by the agency in writing, which shall be published in the notice of proposed rulemaking in the City Record, that such a public hearing on a proposed rule would serve no public purpose." *Id.* at § 1043(d).

49.     CAPA defines a rule as "the whole or part of any statement or communication of general applicability that:

    i.   Implements or applies law or policy, or

   ii.   "[P]rescribes the procedural requirements of an agency including an amendment, suspension, or repeal of any such statement or communication."

*Id.* at § 1041(5).

50.    CAPA further explicitly defines a rule as "any statement or communication which prescribes … standards for the granting of loans or other benefits." *Id.* at § 1041(5)(a).

## Americans with Disabilities Act

51.     The Americans with Disabilities Act ("ADA") 42 U.S.C. 12101 *et seq.*, prohibits

a public entity from denying benefits to individuals because of their disability, or otherwise

discriminating against disabled individuals.

52.     The ADA defines public entities as "any State or local government" and "any

department, agency, ... or other instrumentality of a State or local government." 42 U.S.C. §

12131(1).

53.     A disability under the ADA is defined broadly to include "a physical or mental

impairment that substantially limits one or more major life activities" including, *inter alia*, caring

for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting,

bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and

working." *Id.* at §§ 12102(1), (2), (4).

## New York City Human Rights Law

54.     The New York City Human Rights Law ("NYCHRL"), New York Administrative

Code 8-101 *et seq.*, makes it an unlawful discriminatory practice for public accommodations

"directly or indirectly, to refuse, withhold from or deny" individuals with disabilities "the

accommodations, advantages, facilities or privileges thereof." N.Y. Admin. Code § 8-107(4).

55.     A "public accommodation" is defined in the NYCHRL as a provider of services,

facilities, accommodations, advantages or privileges of any kind. *Id.* at § 8-102(9).

56.     The NYCHRL requires public accommodations to "make reasonable

accommodation to enable a person with a disability to ... enjoy the right or rights in question

12

provided that the disability is known or should have been known by the covered entity." *Id.* at §
8-107(15)(a)

57.     A disability is defined under the NYCHRL as "any physical, medical, mental or
psychological impairment, or a history or record of such impairment."

## STATEMENT OF FACTS

### The SCRIE/DRIE Program and the "60 day rule"

58.     A household applies for SCRIE/DRIE benefits by filling out an application form
provided by Defendants.

59.     A SCRIE/DRIE application must list all the members of the applying household
as well as their income.

60.     A SCRIE/DRIE recipient household must recertify continuing SCRIE/DRIE
eligibility at the expiration of the household's lease, or within six months thereafter, in order to
maintain the household's frozen rent.

61.     Where two members of a household are independently eligible for SCRIE/DRIE
benefits by statute, Defendants require that only one member be named the "head of household,"
and thus that only one member be listed as the SCRIE/DRIE applicant. Defendants do not allow
multiple eligible members of a single household be listed as co-applicants.

62.     Defendants communicate with each SCRIE/DRIE beneficiary household at least
60 days prior to the expiration of the household's lease and provide said households with
information concerning the SCRIE/DRIE recertification process.

63.     Defendants permit surviving members of SCRIE/DRIE beneficiary households to
maintain their frozen rent rate through a "benefit takeover" process whereby an eligible

surviving household member becomes the new "head of household" and the household maintains the previously frozen rent rate.

64.     DFTA, when it was charged with administering the SCRIE/DRIE programs, similarly allowed surviving household members to engage in a benefit takeover.

65.     The benefit takeover process is initiated through the submission of a benefit takeover application to Defendant DOF.

66.     Surviving household members are eligible for a benefit takeover where:

    a.  The surviving household member and their income was listed on the most recent SCRIE/DRIE application or recertification application;

    b.  The surviving household member qualifies independently for SCRIE/DRIE benefits; and

    c.  The surviving household member is a legal tenant of the apartment or has been granted succession rights to the apartment by the landlord.

67.     Prior to May 2014, Defendants, and DFTA previously, did not require applications for benefit takeovers to be submitted within any particular time frame. However, given that SCRIE/DRIE recipient households must recertify SCRIE/DRIE eligibility at the termination of the household's lease, or within six months thereafter, the general practice was for surviving household members to apply for a benefit takeover at or around the time of the termination of the household's lease, when recertifying SCRIE/DRIE eligibility.

68.     Beginning in May of 2014, Defendants instituted an unpromulgated rule whereby Defendant DOF would deny any application for a benefit takeover that was submitted more than 60 days after the death of the previous head of household.

69.     Defendants failed to provide notice of this new unpromulgated rule to any of the individual Plaintiffs or to their deceased heads of household.

70.     Upon information and belief, Defendants failed to provide individualized notice of this new unpromulgated rule to *any* SCRIE/DRIE beneficiary household, despite being in communication with each and every SCRIE/DRIE beneficiary household at least every two years, when Defendants notify the households of the recertification process.

71.     Upon information and belief, the *only* publicly available location where the 60 day rule is mentioned is in an online, downloadable PDF document, entitled "Guide for Tenants." Upon information and belief, the Guide for Tenants was only updated to include the 60 day rule in or around November of 2014.

72.     Defendants did not send or provide this Guide for Tenants to any of the individual Plaintiffs or their deceased heads of household.

73.     Even the application form for a benefit takeover itself did not mention the 60 day rule until on or around November 17, 2014, though the application form has been backdated by Defendants to May 28, 2014.

74.     Defendants allow for no modifications, exceptions, or accommodations to the 60 day rule, even where an applicant for benefit takeover is disabled within the meaning of the ADA and NYCHRL.

75.     Given that any and all individuals eligible for a benefit takeover are, by definition, elderly or disabled, Defendants know or should know that a large percentage of eligible applicants are disabled within the meaning of the ADA and NYCHRL and require, as a reasonable accommodation for their disability, more than 60 days from the death of a close relative to apply for a benefit takeover.

15

76.     Similarly, Defendants know or should know that a large percentage of eligible applicants, being elderly and/or disabled and low income, are unlikely to be particularly computer literate and may not have regular access to the internet, and thus are unlikely to be continuously checking Defendants' websites for new information on the SCRIE/DRIE program or to otherwise be able to access benefits information which is available only on the internet.

77.     Where SCRIE/DRIE recipient households experience a permanent decrease in income of more than 20% of the total household's disposable income, relevant law allows the household to apply for a SCRIE/DRIE benefit redetermination which, if approved, will lower the applicable frozen rent rate so that the previous rent-to-income ratio is maintained. Real Property Tax Law § 467-b(3)(g); NYC Admin. Code § 26-509(b)(9).

78.     Defendants clearly intended the aforementioned rent adjustment to be available to individuals who have suffered a permanent decrease in household income of over 20% due to the death of a family member, as Defendants' downloadable PDF materials state, "There may be a significant loss of income due to a household member who has passed away… If this occurs, the tenant may be eligible for a redetermination of the benefit. To be eligible for a redetermination, there must be a permanent decrease of 20% or more of the combined household income as stated on the last approved SCRIE/DRIE application."

79.     However, even where a household's income is permanently reduced due to the death of the head of household, Defendants do not allow a redetermination of benefits if the surviving household member runs afoul of the unpromulgated 60 day rule.

80.     Where a SCRIE/DRIE applicant and/or beneficiary believes that he/she has been denied benefits in error by Defendant DOF, he/she may appeal the denial internally.

81.     Where surviving members of a SCRIE/DRIE recipient household run afoul of the unpromulgated 60 day rule, appeals are perfunctorily denied, often within a few weeks of the submission of the appeal.

82.     New York City Rent Stabilization Law, NYC Admin Code § 26-509(b)(6), and the NYC Rent Control Law Admin. Code § 26-405(m)(6) provide a six month grace period after the expiration of a SCRIE/DRIE recipient household's lease, during which time the rent remains frozen while the household has an opportunity to apply for recertification. Thus, Defendants clearly would not suffer any substantial harm or detriment in allowing SCRIE/DRIE beneficiary households more than 60 days to comply with SCRIE/DRIE application requirements.

83.     Defendants deny this aforementioned six month grace period to applicants who have run afoul of Defendants' unpromulgated 60 day rule.

84.     Defendants DOF has created the 60 day rule, which allows for no discretion, and which is uniformly and inflexibly applied to the general public. The 60 day rule therefore prescribes "standards for the granting of ... benefits," and thus constitutes a "rule" within the meaning of the City Administrative Procedure Act, New York City Charter Chapter 45, §§ 1041 *et seq.*

85.     Nevertheless, Defendant DOF created and implemented the 60 day rule without meeting the requirements of CAPA:

> a.   Defendants published no notice of proposed rulemaking concerning the 60
> day rule in the City Record, as required by New York City Charter § 1043(b);
>
> b.   Defendants did not transmit a copy of any notice of proposed rulemaking
> concerning the 60 day rule to members of the New York City Council, the
> New York City Corporation Counsel, the chairs of all community boards, the

17

news media, or civic organizations, as required by the New York City Charter § 1043(a), (b);

c.  Defendants did not allow the New York City Corporation Counsel to review the 60 day rule and determine whether it is within the agency's rulemaking authority, as required by the New York City Charter § 1043(c); and

d.  Defendants did not provide the public with any opportunity to see, hear about, review, or comment on the 60 day rule via written comments or a public hearing prior to implementing the rule, as required by the New York City Charter § 1043(d).

86.  The 60 day rule is not "necessary to effectively carry out the provisions" of the relevant SCRIE/DRIE statutes, and in fact effectively deprives individuals of benefits to which they are statutorily entitled, and thus is not a rule within the agency's rulemaking authority pursuant to N.Y. Admin Code §§ 26-509 and 26-611.

87.  New York Real Property Tax Law § 467-b(5)(d) states explicitly that "an entity administering this [tax abatement] program shall not consider any eligibility criteria that are not contained in this section in determining whether to approve or deny an application for the tax abatement program." The relevant section makes no mention of a 60 day rule.

## INDIVIDUAL PLAINTIFFS

### Qiao Xiao He

88.  Plaintiff Qiao Xiao He is the 93 year old widow of Noi Kwong Lam. She and Mr. Lam immigrated to the United States from China together approximately 30 years ago and lived together in the same apartment from the time they arrived in the United States until Mr. Lam died on May 29, 2014.

18

89.     Plaintiff He is wheelchair bound and lives with a colostomy bag. Since the death of her husband, she lives in her apartment alone, receiving 24-hour care provided through Medicare.

90.     Plaintiff He is disabled within the meaning of the ADA and NYCHRL.

91.     Plaintiff He subsists on approximately $700/month in Supplemental Security Income.

92.     Plaintiff's late husband, Mr. Lam, was listed as the "head of household" for SCRIE purposes and the household received SCRIE benefits from 1995 until his death on May 29, 2014.

93.     When Mr. Lam recertified his SCRIE eligibility on January 30, 2014, he reported his wife, Plaintiff He, as a member of his household and included her income in the household income.

94.     On November 7, 2014, approximately five months after Mr. Lam died, Plaintiff He attempted to submit an application for a redetermination of SCRIE benefits because Mr. Lam's death caused a permanent, substantial decrease in Plaintiff He's household income of approximately 35%.

95.     Attached to Plaintiff He's application for redetermination was a letter from Plaintiff He's grandson, Ioi Wah Lin, stating "I am writing on her behalf regarding her SCRIE unit… [M]y grandmother tenant's frozen rent is $523.86 and is based on both my grandmother and grandfather['s] joint income from Social Security… On May 29[th], 2014 my grandfather Mr. Lam Noi Kwong passed away. I am writing this letter to ask for a reassessment of my grandmother's SCRIE unit. Ms. Qiao Xiao He only receives $629.00 each month from her Social

19

Security Income. Every month she has to cover $523.86 for rent leaving her only over $100 a month, which does not account for utilities and food."

96.    Plaintiff He's redetermination application also included a copy of Mr. Lam's death certificate.

97.    On November 21, 2014, only two weeks after Plaintiff He's application for redetermination was submitted, Defendants denied it, stating "We regret that the information indicates that you are not eligible for a benefit takeover for the following reason(s): You are not listed as the SCRIE primary tenant; Your request was not submitted within sixty (60) days from the date the applicant passed away."

98.    This was the first time that Plaintiff He had ever heard of the 60 day rule or any other deadline for a benefit takeover application.

99.    Neither Plaintiff He nor her late husband Mr. Lam had ever received any notification prior to November 21, 2014 indicating that she would only have 60 days after Mr. Lam died to apply for a benefit takeover and preserve her frozen rent.

100.    Plaintiff He does not own a computer, nor does she have access to the internet. Even had she been aware, which she was not, of the existence of a downloadable PDF, buried within which was an unpromulgated rule, she would not have been able to access such a document.

101.    Plaintiff He is homebound. Had she been aware, which she was not, of the existence of unpromulgated rules at Defendant DOF, she would not have been able to go to Defendant DOF's offices to attempt to receive a copy of said unpromulgated rules.

102.    The November 21, 2014 letter from Defendant DOF further stated "Any person aggrieved by this notice may file an Administrative Appeal with the Assistant Commissioner for the Bureau of Administration on Prescribed forms within 60 days after the date of issuance."

103.    Another of Plaintiff He's grandsons went to Defendant DOF's offices less than 60 days after the issuance of the November 21, 2014 letter, and sat down with one DOF's representatives to explain the situation to him. The DOF employee told Plaintiff He's grandson that there was nothing to be done because she missed the 60 day window for a benefit takeover, and that there would be no point in appealing because the appeal would be denied. The employee further told him that the only thing that could be done would be for Plaintiff He to apply for other forms of assistance or to move out of her apartment.

104.    Plaintiff He had no choice but to apply for SCRIE anew, which she did on December 6, 2014.

105.    Plaintiff He's application was approved on December 17, 2014.

106.    Because Plaintiff had to apply for SCRIE anew, as though she had never been the member of a beneficiary household, her rent increased substantially beyond her ability to pay. The frozen rent rate for her apartment jumped from $523.86/month – which, due to the death of her husband, she was already barely able to afford – to $790.00/month, almost $100 more than her entire monthly income.

107.    Because the frozen SCRIE rate was so much higher than Plaintiff He's entire income, she applied for a tax abatement credit adjustment application for tenants, attempting once again to receive the benefits redetermination to which she was statutorily entitled. She submitted the application on January 9, 2015, stating "the approved benefit of $56.89 plus the monthly income of $690 is not enough to cover frozen rent."

108.    On January 16, 2015, only one week after submitting her application for a tax credit adjustment, Defendants again denied her application, stating that "the SCRIE program does not lower your rent due to hardship; it is an exemption program, meaning that when you are approved you become exempt from having to pay future increases in your rent. A redetermination can only be processed if you sustained a permanent loss of your combined household income as represented in your last approved SCRIE application. Therefore your request for redetermination must be denied at this time."

109.    Defendant DOF, however, was well aware prior to January 16, 2015 that Plaintiff He had, in fact, "sustained a permanent loss of [her] combined household income as represented in [her household's] last approved SCRIE application." Defendant DOF nevertheless denied her application for no reason other than that she missed the unpromulgated 60 day deadline, of which she had never once been previously notified.

110.    Plaintiff He thereafter retained counsel who submitted an application for benefit takeover to Defendant DOF On March 13, 2015.

111.    On April 13, 2015, Plaintiff He's attorney was informed by an employee of Defendant DOF that Plaintiff He's application for benefit takeover had already been denied on November 21, 2014, despite the fact that Plaintiff He had previously been unaware of the existence of a benefit takeover application, and had in fact applied for a redetermination of benefits, pursuant to statute.

112.    Plaintiff He is eligible for a benefit takeover, as she:

   a.  Was listed on her husband's most recent SCRIE renewal application as a member of the household and her income was counted towards household income;

22

    b.  Is independently eligible for SCRIE, as has been shown by Defendants' approval of her independent SCRIE application; and

    c.  Is the legal occupant of the rent-regulated apartment she shared with her late husband.

113.    Plaintiff He is also disabled within the meaning of the ADA and the NYCHRL. While she relies heavily on family members to assist her, her disabilities would nonetheless make it extremely difficult for her to fill out paperwork and gather documents within sixty days of the death of her husband of many decades.

114.    Plaintiff He's current rent constitutes approximately 115% of her total monthly income.

115.    Plaintiff He is terrified that her landlord will sue her for rental arrears equal to the difference between the rate of her household's previously frozen rent under SCRIE and the new rent stabilized rate. She is further terrified that if her she is not allowed the benefit takeover and redetermination of SCRIE benefits to which she is statutorily entitled, she will be evicted, displaced, and/or become homeless.

116.    Plaintiff He is understandably afraid that, due to her low income, her age, and her disability, she will be unable to find alternative housing.

117.    Plaintiff is 93 years old, disabled, and homebound. She just lost her husband and companion of many years. She would be severely traumatized by being evicted or otherwise forced to move away from the home she shared with her husband for thirty years.

### Edgar Gomez

118.    Edgar Gomez is the disabled 27 year old son of Ana Gomez. The apartment he shared with his mother is the only home he has ever known. He lived there with his mother for his entire life until she passed away on September 1, 2014

119.    Plaintiff Gomez suffers from severe physical and cognitive disabilities and is disabled within the meaning of the ADA and NYCHRL.

120.    Plaintiff Gomez subsists on approximately $1,300/month, mostly from Social Security Disability benefits.

121.    Plaintiff Gomez's mother, Ana Gomez, was the head of household for DRIE purposes and the household received DRIE benefits for many years until she passed away on September 1, 2014.

122.    When Ana Gomez last renewed her DRIE certification, which she filed upon information and belief in the first half of 2013, she reported her son, Plaintiff Gomez, as a member of her household and included his income in her household income.

123.    On March, 2, 2015, approximately six months after Ana Gomez died, Plaintiff Gomez applied for a benefit takeover.

124.    On March 27, 2015, Defendant DOF denied his application on the grounds that he had not applied within 60 days of his mother's death.

125.    This was the first time that Plaintiff Gomez had ever heard of the 60 day rule or any other deadline for a benefit takeover application.

126.    Neither Plaintiff Gomez nor, upon information and belief, his mother had ever received any notification prior to March 27, 2015 that Plaintiff Gomez would only have 60 days after his mother's death to apply for a benefit takeover and preserve the household's frozen rent.

127.    Plaintiff Gomez does not own a computer, nor does he own a smart phone with internet access. Thus, even had Plaintiff Gomez known, which he did not, of the existence of an unpromulgated rule buried within a downloadable PDF file from Defendants' website, he would nonetheless have been unable to find, download, or otherwise access it.

128.    Plaintiff Gomez's physical and cognitive disabilities would have made it extremely difficult for him to compile an application for benefit takeover and submit it along with supporting documentation within 60 days after the death of his mother, Ana Gomez.

129.    Plaintiff Gomez is eligible for a takeover of benefits as he:

    a.   Was listed on his mother's most recent DRIE renewal application as a member of the household, and his income was included in the household income;

    b.   Is independently eligible for DRIE; and

    c.   Is a legal occupant of the apartment he shared with his mother.

130.    Plaintiff Gomez is eligible for a rent redetermination, because the death of his mother has caused a permanent decrease in his household income of more than 20%.

131.    Plaintiff Gomez's current rent, if Defendants continue to deny him the opportunity to take over Ana Gomez's benefits and receive the rent redetermination to which he is statutorily entitled, will be $865.11/month – approximately 67% of his income – which far exceeds Plaintiff Gomez's ability to pay.

132.    Plaintiff Gomez's landlord is already suing him for the difference between the previous frozen rent rate of $633.73 and the maximum rent regulated rate of $865.11. Plaintiff Gomez does not have the means to pay these rental arrears, which have accumulated solely due to the unlawful acts and omissions of Defendants.

133.    Plaintiff Gomez is terrified that if he is not allowed a benefit takeover and a benefit redetermination, he will be evicted, displaced, and/or become homeless.

134.    Plaintiff Gomez is understandably afraid that his low income and disabilities will make it impossible for him to find a new place to live.

135.    Plaintiff Gomez lives with physical and cognitive disabilities. He just lost his mother. He would be severely traumatized by being evicted from the only home he has ever known.

## Jung Ja Chae

136.    Plaintiff Jung Ja Chae is the 75 year old widow of Soo Yon Chae. Plaintiff Chae and her husband moved to the United States approximately 25 years ago and lived together in their apartment for approximately 23 years, until Soo Yon Chae passed away on April 7, 2014.

137.    Plaintiff Chae subsists on $1,420 per month, primarily as a result of social security benefits.

138.    Plaintiff Chae's late husband, Soo Yon Chae, was the head of household for SCRIE purposes and their household received SCRIE benefits from approximately 2001 until Mr. Chae's death on April 7, 2014.

139.    When Plaintiff Chae's husband last certified the household's SCRIE eligibility on October 30, 2013, he reported his wife, Plaintiff Chae, as a member of the household and included her income in the household income.

140.    On October 1, 2014, approximately seven months after her husband's death, Plaintiff Chae applied for a benefit takeover.

141.    On October 14, 2014, exactly two weeks after Plaintiff Chae's application, Defendant DOF denied her benefit takeover, citing her failure to apply within 60 days of her husband's death.

142.    This was the first time Plaintiff Chae had ever heard of the 60 day rule or any other deadline for a benefit takeover application.

143.    Neither Plaintiff Chae nor, upon information and belief, her late husband had ever received any notification prior to October 14, 2014 indicating that she would have only 60 days after Mr. Chae died to apply for a benefit takeover and preserve the household's frozen rent.

144.    While Plaintiff Chae has a home computer and an internet connection, she is not particularly computer literate, and, even had she known of the existence of an unpromulgated rule buried within a downloadable PDF from Defendant DOF's website, which she did not, she would nonetheless have been unlikely to have successfully found and/or downloaded the document.

145.    On December 1, 2014, Plaintiff Chae appealed the denial of benefit takeover.

146.    On January 20, 2015, Defendant DOF denied Plaintiff's appeal.

147.    On December 1, 2014, Plaintiff Chae had no choice but to apply for SCRIE anew.

148.    On February 10, 2015, Plaintiff Chae's new SCRIE application was granted.

149.    Plaintiff Chae is eligible for a takeover of benefits, as she:

   a.   Was listed as a member of the household on her late husband's most recent SCRIE renewal application, and her income was included in the household income;

   b.   She is independently eligible for SCRIE, as is evidenced by Defendant DOF's approval of her individual SCRIE application; and

            c.  She is the legal occupant of the apartment she and her late husband shared.

150.    Plaintiff Chae is further eligible for a redetermination of her SCRIE benefits, as the loss of her husband has resulted in a permanent decrease in her household income of more than 20%.

151.    Because Plaintiff Chae had to apply for SCRIE anew, as though she had never been the member of a beneficiary household, her rent increased to $1,490.41/month, $70 more than her entire monthly income.

152.    Plaintiff Chae is terrified that she will soon fall behind on her rent and face eviction. Plaintiiff Chae is further terrified that if she does not receive the benefits takeover and redetermination of SCRIE benefits to which she is statutorily entitled, she will be evicted, displaced, and/or become homeless.

153.    Because of Plaintiff Chae's low income and advanced age, she is understandably afraid that she will not be able to find any place else to live.

154.    Because of Plaintiff Chae's advanced age, as well as the fact that she just lost her husband and companion of many decades, she would be severely traumatized by being evicted or otherwise forced to move away from the home she shared with her husband for 23 years.

## Young Ok Yi

155.    Plaintiff Young Ok Yi is the 83 year old widow of Yong Il Yi. She and her late husband moved to the United States approximately 36 years ago. Plaintiff Yi and her husband have lived in the same apartment from the time they moved to the United States until Mr. Yi passed away on June 27, 2013.

156.    Plaintiff Yi subsists on $1,032 per month, primarily as a result of Supplemental Security Income benefits.

157.     Plaintiff Yi's late husband, Yong Il Yi, was the head of household for SCRIE purposes and the household received SCRIE benefits from approximately 1994 until Mr. Yi passed away on June 27, 2013.

158.     When Plaintiff Yi's husband, Yong Il Yi, last recertified his SCRIE eligibility in or about November of 2012, for the March 1, 2013 through February 28, 2015 benefit period, he reported his wife, Plaintiff Yi, as a member of his household and reported her income in his household income.

159.     On February 2, 2015, approximately nineteen months after her husband's death, Plaintiff Yi applied for a benefit takeover.

160.     On February 10, 2015, Plaintiff Yi's application for benefit takeover was denied by Defendant DOF on the grounds that she had filed it more than 60 days after her husband's death.

161.     Ironically, had Plaintiff Yi applied for a benefit takeover more than 60 days, but less than eight months, after her husband's death, her application would have been approved, as Mr. Yi passed away prior to Defendants' implementation of the unpromulgated 60 day rule.

162.     Prior to the February 10, 2015 denial of Plaintiff Yi's application for a benefit takeover, Plaintiff Yi had never heard of the 60 day rule or any other deadline for a benefit takeover application.

163.     Neither Plaintiff Yi nor, upon information and belief, her late husband had ever received any notification prior to February 10, 2105 indicating that she would have only 60 days after Mr. Yi died to apply for a benefit takeover and preserve the household's frozen rent.

164.     While Plaintiff Yi has a computer in her home, she does not know how to connect to or navigate the internet. The computer is used only by Plaintiff Yi's daughter when she comes

29

to visit. Thus, even had Plaintiff Yi known of the existence of an unpromulgated rule buried in a downloadable PDF document on Defendants' website, which she did not, she would nonetheless have been unable to find, download, or otherwise access it.

165.    On February 18, 2015, Plaintiff Yi appealed the February 10, 2015 denial of her application for benefit takeover.

166.    On February 25, 2015, exactly one week later, Defendant DOF denied Plaintiff Yi's appeal.

167.    On February 18, 2015 Plaintiff Yi applied anew for SCRIE benefits.

168.    On March 4, 2015, Plaintiff Yi's new SCRIE benefit application was approved by Defendant DOF.

169.    Plaintiff Yi is eligible for a benefit takeover, as she:

    a.  Was listed as a member of the household on her late husband's most recent SCRIE renewal application, and her income was listed as part of the household's income;

    b.  Is independently eligible for SCRIE benefits, as is evidenced by Defendant DOF's approval of her independent SCRIE benefit application; and

    c.  Is a legal occupant of the apartment she shared with her husband.

170.    Plaintiff Yi is entitled by statute to a redetermination of her benefits, as her husband's death has caused a permanent decrease in her household income of more than 20%.

171.    Because Plaintiff Yi had to apply for SCRIE benefits anew, as though she had never been the member of a beneficiary household, her rent has increased substantially beyond her ability to pay -- to $1,269.08/month, two hundred and thirty seven dollars more than her entire monthly income.

172.     Plaintiff Yi is terrified that she will be sued by her landlord for rental arrears, caused entirely by Defendants' unlawful acts and omissions.

173.     Plaintiff Yi is further terrified that if she is not allowed the benefit takeover and redetermination of SCRIE benefits to which she is statutorily entitled, she will be evicted, displaced and/or become homeless.

174.     Because of Plaintiff Yi's low income and advanced age, she is understandably afraid that she will not be able to find another place to live.

175.     Plaintiff Yi is 83 years old and, having lost her husband and companion of many decades, lives alone. She would be severely traumatized by being evicted or otherwise forced to move from the home she has lived in since 1992.

### Desiree Chung

176.     Plaintiff Desiree Chung is the disabled 61 year old daughter of Daphne Chung.

177.     Plaintiff Chung is disabled within the meaning of the ADA and the NYCHRL. She suffers from sickle cell anemia which prevents her from working and which has caused her to be hospitalized three times within the past year.

178.     Plaintiff Chung subsists on approximately $1,395 per month, primarily from Social Security Disability benefits.

179.     Plaintiff Chung's mother, Daphne Chung, was the head of household for SCRIE purposes and the household received SCRIE benefits from 2001 until Daphne Chung's death on April 28, 2013.

180.     When Daphne Chung last recertified her SCRIE eligibility on February 12, 2013, she reported her daughter, Plaintiff Chung, as a member of the household and included Plaintiff Chung's income in the household income.

31

181.    On August 27, 2014, approximately sixteen months after her mother's death, Plaintiff Chung applied for a benefit takeover.

182.    Plaintiff Chung submitted her application in person at Defendant DOF's offices. She was told by an employee of Defendant DOF that she could not apply for a benefit takeover because more than 60 days had elapsed since her mother's death.

183.    This was the first time that Plaintiff Chung had ever heard of the 60 day rule or any other deadline for an application for benefit takeover.

184.    Neither Plaintiff Chung nor her mother had ever received any notification prior to August 27, 2014 indicating that she would only have 60 days after her mother died to apply for a benefit takeover and preserve her household's frozen rent.

185.    Plaintiff Chung was her mother's primary caretaker prior to her death, and thus saw all of her mother's mail. Plaintiff Chung thus would have known whether her mother had ever received any notice of the 60 day rule, which she did not.

186.    Ironically, had Plaintiff Chung applied for a benefit takeover more than 60 days, but less than 13 months, after her mother had died, her application would have been approved, as Plaintiff Chung's mother died prior to Defendants' implementation of the unpromulgated 60 day rule.

187.    Plaintiff Chung affirmatively sought a benefit takeover prior to her SCRIE recertification deadline. Had she known of the 60 day rule, she would have applied within 60 days.

188.    On September 16, 2014, Plaintiff Chung received a letter from DOF informing her that her SCRIE benefits had been terminated effective May 1, 2013.

189.    On November 9, 2014, Plaintiff Chung appealed the September 16, 2014 decision denying and revoking her benefits.

190.    On February 9, 2015, Defendant DOF denied her appeal.

191.    The same DOF employee who initially told Plaintiff Chung that she had missed the 60 day deadline also told her that she needed to apply for DRIE benefits.

192.    Plaintiff Chung therefore applied for independent DRIE benefits.

193.    Plaintiff Chung's application for DRIE was approved.

194.    Plaintiff Chung is eligible for a benefit takeover, as she:

   a.   Was listed on her mother's most recent SCRIE application as a member of the household, and her income was included in the household income;

   b.   Is independently eligible for DRIE, as evidenced by Defendants' approval of her application for DRIE benefits; and

   c.   Is a legal occupant of the apartment she shared with her mother.

195.    Plaintiff Chung is similarly entitled to a redetermination of her benefits, as the death of her mother caused a permanent decrease of more than 20% of her household income.

196.    Because Plaintiff Chung had to apply anew for DRIE benefits as though she had never been a member of a SCRIE beneficiary household, her rent has increased far beyond her ability to pay – to $949.89/month, approximately 68% of her monthly income.

197.    Plaintiff Chung's landlord is currently suing her for the difference between the apartment's previously frozen rent and the current, higher rental rate, retroactive through the date of her mother's death, an amount which far exceeds Plaintiff Chung's ability to pay and which has only accrued due to the unlawful acts and omissions of Defendants.

198.    Plaintiff Chung is terrified that, if she is not allowed the benefit takeover and a redetermination of benefits to which she is statutorily entitled, she will be evicted, displaced and/or become homeless.

199.    Plaintiff Chung is understandably afraid that, because of her low income, disability, and age, she will not be able to find another place to live.

200.    Plaintiff Chung is disabled and would be severely traumatized by being evicted or otherwise forced to move from the apartment she lived in with her late mother.

### Svetlana Tinkelman

201.    Plaintiff Svetlana Tinkelman is the disabled 68 year old widow of Yakov Tinkelman. She and her late husband were married for 45 years and they lived together in the apartment where Plaintiff Tinkelman currently resides for over 19 years.

202.    Plaintiff Tinkelman is disabled within the meaning of the ADA and the NYCHRL. She suffers from severe depression, which has been exacerbated by the death of her late husband.

203.    Plaintiff Tinkelman is currently caring for her 92 year old mother, a Holocaust survivor, as well as her disabled adult son, both of whom live with her in the apartment she shared with her late husband.

204.    Plaintiff Tinkelman, her mother, and her son subsist collectively on Supplemental Security Income grants of a total of $2,460.00 per month for all three family members.

205.    Plaintiff Tinkelman's late husband, Yakov Tinkelman, was listed as the "head of household" for SCRIE purposes and the household received SCRIE benefits from August 1, 2014, until Mr. Tinkelman's death on December 5, 2014.

206.   When Yakov Tinkelman made his SCRIE application, he reported his wife, Plaintiff Svetlana Tinkelman, as a member of his household and included her income in his household income.

207.   Shortly after Yakov Tinkelman's death, Plaintiff Tinkelman went to a local organization, the Shorefront Jewish Community Council ("JCC") for assistance with informing Defendants about her husband's death. A caseworker there helped her call 311 to inform Defendants.

208.   Soon thereafter, by a letter dated February 3, 2015 and addressed to the deceased Yakov Tinkelman, Defendant DOF stated that Yakov Tinkelman's SCRIE benefits were terminated, but that a surviving family member could apply for a benefit takeover within 60 days of the date of the letter.

209.   On February 13, 2015, only ten days after receipt of the letter from Defendant DOF and only seventy days after the death of her husband, Plaintiff Tinkelman submitted an application for benefit takeover.

210.   Simultaneously, on February 13, 2015, Plaintiff Tinkelman applied for a redetermation of her SCRIE benefits, to which she was entitled because the death of her husband had caused a permanent decrease in her household income of over 20%.

211.   Plaintiff Tinkelman's applications for benefit takeover and redetermination were both submitted with the assistance of JCC. Both applications, included supporting documentation, were submitted to Defendant DOF by regular mail on February 13, 2015.

212.   On or about February 26, 2015, only 23 days after the date of Defendant DOF's February 3, 2015 letter, when Plaintiff had not yet received a response from Defendants, she returned to JCC, which helped her formally appeal the revocation of her late husband's SCRIE

benefits. The formal appeal and supporting documentation were submitted on February 26, 2015 by fax.

213.     By letter dated March 16, 2015, Defendants denied Plaintiff Tinkelman's application for benefit takeover and redetermination. Defendants' stated reason was that she had not applied within 60 days of her late husband's death, despite the fact that the application was submitted well within the timeframe given by Defendant DOF itself in its February 3, 2015 letter.

214.     Prior to February 3, 2015, Plaintiff Tinkelman had never heard of the 60 day rule or any other deadline for a benefit takeover.

215.     Neither Plaintiff Tinkelman nor, upon information and belief, her husband had ever received any notification from Defendants prior to February 3, 2015 that Plaintiff Tinkelman would have only 60 days after her husband's death to file an application for a benefit takeover and maintain the household's frozen rent.

216.     The only written notice Plaintiff Tinkelman ever received of a deadline to file an application of benefit takeover was in Defendant DOF's letter of February 3, 2015, which stated a timeline that Plaintiff Tinkelman met (*i.e.*, 60 days after the date of the letter).

217.     Plaintiff Tinkelman is eligible for a takeover of benefits, as she:

   a.   Was listed on her late husband's SCRIE application as a member of his household and her income was included in the household income;

   b.   Is independently eligible for SCRIE; and

   c.   Is a legal occupant of the apartment she and her husband shared and is entitled, as a matter of law, to a Rent Stabilized renewal lease in her own name.

218.    Plaintiff Tinkelman is similarly entitled to a redetermination of SCRIE benefits, as the death of her husband caused a permanent decrease in her household income of more than 20%.

219.    Plaintiff Tinkelman's current rent, which is the rent stabilized rate for her apartment, is $1,505.80/month, substantially higher than the $1,397.46/month she and her late husband had been paying previously. The new rent constitutes more than 60% of her household's monthly income.

220.    This amount is far beyond Plaintiff Tinkelman's ability to pay, particularly as she has permanently lost her husband's income and Defendants have denied her the opportunity for a redetermination of her SCRIE benefit, to which she is entitled by law.

221.    Plaintiff Tinkelman is afraid that her landlord will sue her for rental arrears if she is unable to make her higher monthly rent payments. She is currently struggling to pay her rent, allowing other obligations to go unmet.

222.    Plaintiff Tinkelman is further terrified that if she does not receive the benefit takeover or a redetermination of SCRIE benefits to which she is statutorily entitled, she and her family will be evicted, displaced, and/or become homeless.

223.    Because of the advanced age of Plaintiff Tinkelman and her mother, her son's disability, her own disability, and the household's low income, Plaintiff Tinkelman is understandably afraid that she and her family will not be able to find another place to live.

224.    Because of the advanced age of Plaintiff Tineklman and her mother, as well as her son's disability and her own disability, the entire family would be severely traumatized by being evicted, displaced, or otherwise forced to move from the apartment they share.

## Aleksandra Grinberg

225.    Plaintiff Alexandra Gringberg is the 93 year old widow of Zurach Grinberg. She and her late husband moved to the United States nearly 50 years ago in 1965. They were married for over 70 years and resided together in Plaintiff Grinberg's current apartment for 43 years.

226.    Plaintiff Grinberg is disabled within the meaning of the ADA and the NYCHRL. She has multiple medical conditions, including coronary artery disease, vascular heart disease, hypertension, lower extremity edema, severe lower back pain, depressions, shortness of breath, and mobility issues related to these conditions.

227.    Plaintiff Grinberg subsists on $840 per month from a combination of Social Security benefits and Supplemental Security Income benefits.

228.    Plaintiff Grinberg's late husband, Zurach Grinberg, was listed as the head of household for SCRIE purposes and the household received SCRIE benefits for many years until Mr. Grinberg's death on March 2, 2014.

229.    When Zurach Grinberg last recertified his SCRIE eligibility, he reported his wife, Plaintiff Grinberg as a member of his household and included her income in his household income.

230.    On or about January 5, 2015, approximately nine months after her husband's death, Plaintiff Grinberg applied for a takeover of her husband's SCRIE benefits. Her application was submitted at the time that her Rent Stabilized lease, and thus SCRIE benefits, were to be renewed and recertified respectively.

231.    Plaintiff Grinberg's son had informed their landlord of Zurach Grinberg's death months earlier. The family was struggling to have the landlord issue a corrected renewal lease under Plaintiff Grinberg's name, despite her entitlement to such as a matter of law.

232.    By letter dated January 15, 2015, Plaintiff Grinberg's application for benefit takeover was denied by Defendant DOF because the application had not been submitted within 60 days of her husband's death.

233.    This was the first time that Plaintiff Grinberg had ever heard of the 60 day rule or any other deadline for a benefit takeover application.

234.    Neither Plaintiff Grinberg nor, upon information and belief, her late husband had ever received any notification prior to January 15, 2015 indicating that she would have only 60 days after Mr. Grinberg died to apply for a benefit takeover and preserve the household's frozen rent.

235.    Ironically, had Plaintiff Grinberg applied for a benefit takeover more than 60 days, but less than 87 days, after her late husband's death, her application would have been granted, as Mr. Grinberg died prior to Defendants' implementation of the unpromulgated 60 day rule.

236.    By letter and application dated January 26, 2015, and with the assistance of a local community organization, the Flatbush Development Corporation ("FDC"), Plaintiff Grinberg appealed the aforementioned denial of benefit takeover.

237.    In her appeal, Plaintiff Grinberg asked both for a reconsideration of her application for a benefit takeover and for a redetermination of her SCRIE benefits, to which she was entitled by law as the death of her husband had caused a permanent decrease in her income of over 20%.

238.    Plaintiff Grinberg's disabilities would have made it extremely difficult for her to have put together the necessary paperwork together to apply for a benefit takeover and/or redetermination within 60 days of the death of her husband of over 70 years.

239.    Plaintiff Grinberg is eligible for a takeover of benefits, as she:

   a.   Was listed on her husband's most recent SCRIE application as a member of the household, and her income was included in the household income;

   b.   Is independently eligible for SCRIE;

   c.   Is a legal occupant of the apartment she and her late husband shared and has a Rent Stabilized renewal lease in her own name.

240.    Plaintiff Grinberg is also eligible for a redetermination of SCRIE benefits, as the death of her husband caused a permanent decrease in her household income of more than 20%.

241.    Plaintiff Grinberg's current rent, which is the rent stabilized rate for her apartment, is $838.32/month, nearly 100% of her monthly income of $840.00.

242.    Plaintiff Grinberg's landlord has sued her for rental arrears equal to the difference between the rate of the previously frozen rent under SCRIE and her renewal rate, arrears which are caused solely by the unlawful acts and omissions of Defendants. After an initial adjournment, she is due back in court on June 17, 2015.

243.    Plaintiff Grinberg is terrified that if she is not allowed a benefit takeover and redetermination of SCRIE benefits to which she is statutorily entitled, she will be evicted, displaced, and/or become homeless.

244.    Because of Plaintiff Grinberg's advanced age and disabilities, she is understandably afraid that she will not be able to find another place to live.

245.    Because of Plaintiff Grinberg's advanced age and disabilities, she would be severely traumatized by being evicted or otherwise forced to move away from the home she shared with her late husband for 43 years.

### Kyung Sill Hyun

246.    Plaintiff Kyung Sill Hyun is the 84 year old widow of Yi Kyu Hyun. She and her husband moved to the United States approximately 24 years ago and have lived together in the apartment where Ms. Hyun now resides for approximately 23 years, until Mr. Hyun passed away on July 2, 2013.

247.    Plaintiff Hyun subsists on $930 per month, primarily from Supplemental Security Income.

248.    Plaintiff Hyun's late husband, Yi Kyu Hyun, was the head of household for SCRIE purposes and the household received SCRIE benefits from approximately 1995 until Mr. Hyun's death on July 2, 2013.

249.    When Plaintiff Hyun's husband, Yi Kyu Hyun, last recertified his SCRIE eligibility in or about 2012, he reported his wife, Plaintiff Hyun, as a member of his household and reported her income as part of the household income.

250.    On September 24, 2014, approximately fifteen months after her husband's death, Plaintiff Hyun applied for a benefit takeover.

251.    On September 29, 2014, only five days after Plaintiff Hyun filed her application for a benefit takeover, Defendant DOF denied the application because Plaintiff Hyun had not filed her application for a benefit takeover within 60 days of her husband's death.

252.    This was the first time that Plaintiff Hyun had ever heard of the 60 day rule or any other deadline for an application for a benefit takeover.

253.    Neither Plaintiff Hyun nor, upon information and belief, her late husband had ever received any notification prior to September 29, 2014 that she would have only 60 days after Mr. Hyun's death to apply for a benefit takeover and maintain the household's frozen rent.

254.   Plaintiff Hyun has a home computer, though she does not know how to use it very well, and does not know how to connect it to the internet. Therefore, even had Plaintiff Hyun been aware, which she was not, of the existence of an unpromulgated rule buried within a downloadable PDF document from Defendants' website, she would not have been able to find, download, or otherwise access it.

255.   Ironically, had Plaintiff Hyun applied for a benefit takeover more than 60 days but less than 10 months, after her husband's death, her application would have been approved, as Mr. Hyun died before Defendants' implementation of the unpromulgated 60 day rule.

256.   On September 26, 2014, Plaintiff Hyun applied anew for SCRIE benefits.

257.   On February 5, 2015, Plaintiff Hyun's new SCRIE application was approved.

258.   Plaintiff Hyun is eligible for a benefit takeover because she:

   a.   Was listed on her husband's most recent SCRIE application as a member of the household and her household income was included in the household income;

   b.   Is independently eligible for SCRIE benefits, as is evidenced by Defendant DOF's approval of her SCRIE application; and

   c.   Is a legal occupant of the apartment she and her late husband shared.

259.   Plaintiff Hyun is also eligible for a redetermination of SCRIE benefits, as the death of her husband caused a permanent decrease in her household income of more than 20%.

260.   Because Plaintiff Hyun was forced to apply for SCRIE benefits anew, as though she had never been the member of a beneficiary household, her rent has increased substantially beyond her ability to pay – to $1,368.03/month, approximately 147% of her entire monthly income.

261.    Plaintiff Hyun's landlord has sued her for rental arrears equal to the difference between the rate of her household's previously frozen rental rate under SCRIE and her new rental rate, an amount that far exceeds Plaintiff Hyun's ability to pay and which is caused solely by the unlawful acts and omissions of Defendants.

262.    Plaintiff Hyun is terrified that if she is not allowed the benefit takeover and redetermination of SCRIE benefits to which she is statutorily entitled, she will be evicted, displaced, and/or become homeless.

263.    Because of Plaintiff Hyun's advanced age and low income, she is understandably afraid that she will not be able to find a new place to live.

264.    Because of Plaintiff Hyun's advanced age, she would be severely traumatized by being evicted, displaced, or otherwise forced to move from the home she shared with her late husband for over twenty years.

## FIRST CAUSE OF ACTION

### Violation of Due Process

*On Behalf of the Individual Plaintiffs*

265.    The allegations contained in every paragraph above are hereby incorporated as though fully reiterated and set forth herein.

266.    42 U.S.C. § 1983 creates a cause of action on behalf of "any citizen of the United States or other person within the jurisdiction thereof" who has been deprived of "any rights, privileges or immunities secured by the Constitution and laws" against any person acting "under color of any statute, ordinance, regulation or usage...."

267.    Defendants are "persons" acting "under color" of City and State law within the meaning of 42 U.S.C. § 1983.

268.    The individual Plaintiffs, all of whom are eligible for a benefit takeover, have a property interest in applying for a benefit takeover, having their applications fairly adjudicated, and ultimately receiving the benefit takeover.

269.    The individual Plaintiffs, all of whom are eligible for a redetermination of benefits, have a property interest in applying for a redetermination of benefits, having their applications fairly adjudicated, and ultimately receiving the redetermination of benefits.

270.    The individual Plaintiffs, whose applications for benefit takeover and redetermination must be considered by Defendants individually, are entitled to individualized notice of a termination of benefits and the steps and procedures to be followed to maintain benefits prior to the termination of such benefits.

271.    The individual Plaintiffs' applications for benefit takeover and redetermination were denied by Defendants solely based on a new unpromulgated 60-day time limit of whose existence Plaintiffs were not and could not reasonably have been expected to be aware.

272.    Defendants failed to publicize the existence of the 60 day rule in a manner that is reasonably calculated to inform the population of SCRIE/DRIE recipients and benefit takeover applicants, who are by definition low income elderly and/or disabled individuals.

273.    Plaintiffs had no actual or constructive notice of the 60 day rule.

274.    Defendants' failure to give the individual Plaintiffs meaningful, individualized notice of the rule on which the termination and/or denial of their benefits would be based, deprived them of due process of law.

275.    Defendants, who communicate directly and individually with each and every SCRIE and DRIE recipient household at least once every two years, would not be unduly

burdened by a requirement that they individually notify SCRIE and DRIE recipient households of any deadline to apply for a benefit takeover.

276.    The individual Plaintiffs, in contrast, are severely prejudiced by Defendants' failure to inform them of the 60-day rule, since they now all face drastic rent increases and are threatened with eviction and homelessness.

277.    Defendants' actions are pursuant to an internal rule, and thus are neither random nor unauthorized. There is thus no post deprivation remedy which could cure Defendants' failure to provide Plaintiffs with notice of the 60 day rule or their termination of benefits.

278.    Defendants have terminated the individual Plaintiffs' benefits retroactive to the date their heads of household died. Defendants have thus deprived Plaintiffs of their property interests without due process of law, in violation of the 14th Amendment to the U.S. Constitution.

279.    Defendants have deprived the individual Plaintiffs of the opportunity to apply for a benefit takeover as well as the opportunity to have their applications for benefit takeover be fairly adjudicated without due process of law in violation of the 14th Amendment to the U.S. Constitution.

280.    Defendants have deprived the individual Plaintiffs of the benefit takeovers to which they are categorically entitled without due process of law in violation of the 14th Amendment to the U.S. Constitution.

281.    Defendants have deprived the individual Plaintiffs of the opportunity to apply for a redetermination of their benefits as well as the opportunity to have their applications for redetermination be fairly adjudicated without due process of law in violation of the 14th Amendment to the U.S. Constitution.

282.    Defendants have deprived the individual Plaintiffs of the redetermination of their benefits to which they are categorically entitled without due process of law in violation of the 14th Amendment to the U.S. Constitution.

## SECOND CAUSE OF ACTION

### Violation of the New York City Administrative Procedure Act

*On Behalf of All Plaintiffs*

283.    Defendant DOF constitutes an "agency" within the meaning of the City Administrative Procedure Act ("CAPA"), Chapter 45 of the New York City Charter.

284.    The 60 day rule constitutes a "rule" within the meaning of CAPA.

285.    The 60 day rule falls outside the scope of DOF's rulemaking authority, as it is not "necessary to effectively carry out the provisions" of the SCRIE/DRIE program, and in fact deprives individuals of benefits to which they are statutorily entitled.

286.    Defendants further failed to follow the following requirements in CAPA:

    a.  Publishing a notice of proposed rulemaking in the City Record, which shall include the full text of the proposed rule as well as the "basis and purpose of the proposed rule, the statutory authority… upon which the action is based, the time and place of public hearing, if any, to be held or the reason that a public hearing will not be held, and the final date for receipt of written comments." New York City Charter § 1043(b);

    b.  Transmitting copies of the aforementioned notice of proposed rulemaking to each member of the New York City Council, the New York City Corporation

Council, the chairs of all community boards, the news media, and civic
organizations. New York City Charter § 1043(a), (b);

c.  Allowing the New York City Corporation Counsel to review the proposed rule
and determine whether it is within the agency's rulemaking authority. *Id.* at §
1043(c); and

d.  "Provid[ing] the public an opportunity to comment on the proposed rule

   i.  Through submission of written data, views, or arguments, and

   ii.  At a public hearing unless it is determined by the agency in writing,
   which shall be published in the notice of proposed rulemaking in the
   City Record, that such a public hearing on a proposed rule would serve
   no public purpose." *Id.* at § 1043(d).

287.   Defendants' implementation of and adherence to the 60 day rule is thus unlawful
under CAPA.

288.   Under the New York City Charter, Plaintiff James is charged with receiving,
investigating, and attempting to resolve complaints regarding the operation of City agencies.
NYC Charter Ch. 2 § 24(f).  She also serves a role of ensuring enforcement of the City Charter
and investigating violations of the Charter.  NYC Charter Ch. 47 § 1061.

## THIRD CAUSE OF ACTION

### Violation of the Americans with Disabilities Act

*On Behalf of Plaintiffs He, Gomez, Grinberg, and Chung*

289.   Plaintiffs He, Gomez, Grinberg and Chung are disabled within the meaning of the
Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 *et seq.*

290.    Defendants are public entities within the meaning of the ADA.

291.    Defendants' strict adherence to the 60 day rule despite the fact that Defendants knew or should have known that Plaintiffs He, Gomez, Grinberg, and Chung were disabled and thus would likely require an accommodation of extended time to file an application of benefit takeover, constitutes unlawful discrimination under the ADA.

## FOURTH CAUSE OF ACTION

### Violation of the New York City Human Rights Law

*On Behalf of Plaintiffs He, Gomez, Grinberg, and Chung*

292.    Plaintiffs He, Gomez, Grinberg, and Chung are disabled within the meaning of the New York City Human Rights Act  ("NYCHRL"), N.Y. Admin. Code § 8-101 *et seq.*

293.    Defendants constitute public accommodations within the meaning of the NYCHRL.

294.    Defendants' strict adherence to the 60 day rule despite the fact that Defendants knew or should have known that Plaintiffs He, Gomez, Grinberg, and Chung were disabled and thus would likely require an accommodation to file an application of benefit takeover, constitutes unlawful discrimination under the NYCHRL.

## PRAYER FOR RELIEF

295.    WHEREFORE, Plaintiffs respectfully request that this Court enter a Judgment:

   a.  Declaring the acts and practices complained of herein to be violations of the Fourteenth Amendment to the U.S. Constitution, the New York City

Administrative Procedure Act, the Americans with Disabilities Act, and the New York City Human Rights Law;

b.  Directing Defendants to make the individual Plaintiffs whole for the rent overcharges they have paid due to Defendants' unlawful acts and omissions complained of herein, including prejudgment interest;

c.  Directing Defendants to honor tax abatement credits to the individual Plaintiffs' landlords in the amount that Defendants would have done but for their unlawful reliance on the 60 day rule, retroactive through the death of the individual Plaintiffs' heads of household.

d.  Directing Defendants to make the individual Plaintiffs whole for the fear and suffering they have experienced as a result of Defendants' unlawful acts and omissions complained of herein;

e.  Directing Defendants to pay Plaintiffs punitive damages;

f.  Issuing a permanent injunction against Defendant DOF:

        iii.  Granting Plaintiffs the frozen SCRIE/DRIE rates they would have received, pursuant to both a benefit takeover application and a redetermination of benefits, but for Defendants' unlawful reliance on the 60 day rule;

        iv.  Requiring Defendants to establish effective procedures to accommodate SCRIE/DRIE recipients and applicants with disabilities; and

        v.  Requiring Defendants to appropriately train their staff concerning the requirements of the 14th Amendment, the New York City

Administrative Procedure Act, the Americans with Disabilities

Act, and the New York City Human Rights Law;

   vi.  Awarding Plaintiffs reasonable fees and costs; and

  vii.  Granting such other relief as this Court deems necessary and proper.

## **DEMAND FOR A JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues.

Dated: June 3, 2015

     New York, New York

Respectfully submitted,

_____/s/_____

**CHRISTINE CLARKE, Esq.**
EDWARD JOSEPHSON, Esq.
JANE M. LANDRY, Esq.
CHRISTOPHER D. LAMB, Esq.
ANITA WU, Esq.
IAN DAVIE, Esq.
HEEJUNG KOOK, Esq.

*Attorneys for Plaintiffs*
Legal Services – NYC
40 Worth Street, Suite 606
New York, New York 10013
Ph/fax: (646) 442-3564
cclarke@ls-nyc.org

_____/s/_____

GRACE H. SHIM, Esq.

*Attorneys for Plaintiffs Jung Ja Chae and Young Ok Yi*
Min Kwon Center for Community Action
136-19 41st Ave 3rd Floor
Flushing, New York 11355
Tel: 718-460-5600
Fax: 718-445-0032
Grace.shim@minkwon.org

_____/s/_____

AMANDA MASTERS, Esq.
JENNIFER LEVY, Esq.

*Attorneys for Letitia James*
Public Advocate for the City of New York
1 Centre Street, 15th Floor
New York, New York 10007
Tel: (212) 669-2175
amasters@publicadvocate.nyc.org